Good morning, Your Honor. May it please the Clerk, Steve Cerbalic for Appellants. I intend on reserving four minutes for my rebuttal. The Arizona Legislature established a Peace Officers Bill of Rights. It is clear from the amendments passed in 2022 that the Legislature intended that the POBR, the entire article, constitute the minimum rights given to police officers when they face disciplinary action. The application, the invocation of the POBR isn't triggered until there's an investigation or disciplinary action against a covered peace officer. The District Court got it wrong when it decided that the POBR, as amended in 2022, had a retroactive application. We suggest that all statutes contain an implied concept. The law can be read to say, from this day forward, when they take effect. In this case, had the statute said, from this day forward, a Peace Officers Bill of Rights is established. From this day forward, agencies will need to provide due process to qualified officers. And from this day forward, officers are entitled to appeal rights. If this term was there, then the statute would obviously not be retroactive. But it doesn't change the analysis of this case. Well, counsel, the problem is normally, if a legislature wants a statute to be effective immediately, it will put an effective date in there. So that's the problem with your argument, in my view. Well, we don't need an immediate, an emergency clause is what they call it in Arizona. We don't need an emergency clause. What we need is when does the statute take effect? So when do these officers have the rights guaranteed by the Peace Officers Bill of Rights? The generally effective date of the statute is the generally effective date. So what we have is in September of 2022, when that law takes effect. Now, from this day forward, here are the minimum rights that apply to peace officers. So in this case, the town of Gilbert had an obligation to follow the POBR from that day forward, from the effective date forward. So there isn't a retroactive application to the contract. So here's, I think, the argument for why it's retroactive. It's that there was a substantive change in the 2022 amendment that said, prior to that, POBR said, here are POBR protections, but you can contract around them under employment agreements. 2022 comes around and it says, these are the minimal standards. You cannot contract it around them. It changes the ability. And so I think the retroactive application argument is that change that takes effect would apply to contracts going forward. And if you override preexisting contracts, then it's having a retroactive impact. Why is that not the right way to look at it? Well, it's not the right way to look at it because the Arizona Supreme Court in Kroll has actually clarified some things for us while this case was pending. The time that you look at is when are we actually doing something with this contract right? And is it a vested contract right? So we have an at-will term of an appointment letter, but that doesn't qualify as a vested contract right in Arizona. And no court has held that that qualifies as a vested contract right. What you have is up until something changes that. Why not? Because, I mean, if, I don't know that you can have it both ways. If the 2022 wouldn't matter whether there's a vested contract right before or after, but clearly it was important for the legislature to enact a minimal standard of rights. And so what proceeded was a vested right. Sure. And this isn't unique, by the way, to at-will agreements. So you have a variety of different laws that get passed that actually impact at-will agreements. I agreed to have a certain pay for my hours. Now the state has passed the minimum wage. That's going to change my at-will agreement that I had. My wage is going to change. We passed this on a going forward basis. So it wouldn't mean that someone can go and say, well, hey, I want my, I want a new minimum wage for the last 10 years. And I think that's, that's the problem with trying to parse out your argument. It seems to me as it has a flavor of retroactive impact because otherwise what you would be doing is overriding all the pre-existing contracts that are at-will. Which isn't new to the law. Let me take another example. Age discrimination. I used to be an at-will employee and now there's an age discrimination law that's passed. And now we say we can't discriminate people based off of age. Or you can get the Civil Rights Acts that have passed that say these are the actual requirements that we want going forward. We can't terminate somebody. Going forward. Going forward. But it doesn't mean that if somebody was discriminated against before. Correct. The act was passed within the window that you could bring a statute that they have any, any recourse. And that's what I, that's what I want to be really clear on is that in this case, this is only going forward. This is only from the effective date of the statute on. Right. So what we have is in September of 2022, when this law takes effect, going forward, you have to follow this due process that exists for police officers. And that's the point I was trying to make is that the legislature could have said any at-will contracts that were enforced beforehand are nullified under this statute. But they didn't say that. That's the problem. Well, and the part that's confusing to me is I don't know of the Civil Rights Act saying that explicitly. I don't know of the Age Discrimination Act saying that explicitly. I don't know of Minimum Wage Acts saying that explicitly. What happens is from the effective date of the legislation, if there's a triggering event, then going forward from that effective date, these are the minimum rights that need to be applied, which is exactly what happened here. We're not looking for an investigation that started in 2022. We don't even have the Kroll fact case where we're saying, what do we do if we're already down this road? In this case, every operative event from the investigation to the termination happened after the effective date of the statute. Counselor, my issue is that it does seem that the legislature was pretty close to saying it modifies all pre-existing contracts because it says this article does not preempt agreements that supplement or enhance the provisions of this article. Negative implication is that it does preempt contracts that detract from it, correct? Well, yeah, and we can take a look at the state of the law. At that point, you have MOUs or agreements with legislators. Exactly. And so the word preemption means that you're superseding something that previously exists. Absolutely. Right? So that's textually what the Arizona legislator is telling us. If there's an outwill contract, it's preempted under this statute. And we even have the actual statute that exists in Arizona that was cited where you say nothing in this paragraph shall be construed to affect the rights of public employees under the Constitution of Arizona and state and local laws of this state. So you have an idea that for public employees, the legislature can pass protections going forward, and we have a clear intent here to say these are the minimum rights for peace officers. And the logic of it — I guess my point is that you don't even need any additional language. It's right there with the preemption. Preemption means that you're taking precedence over something that previously exists or renders something that exists invalid and ineffective. Absolutely. And that's where we have the minimum rights from the effective date of the statute going forward. Just as you used to be able to fire someone based off of age, you can't do that anymore on the effective date. But you don't need to retroactively look back into that. So do you have — if Judge Bumate is correct, and there is a clear intent statement in reading that statute, do you have a contract impairment issue then under either Arizona law or the 14th Amendment? I don't believe that there is a contract impairment issue because, as the Supreme Court just clarified, we don't have a vested obligation of the contract at that point in time. So the at-will employment term has never been held to be a vested contract. And you're saying from Kroll? From Kroll. But Kroll was about, I guess, it was the firefighter cancer case, right? So I guess my understanding of Kroll was that it encompassed — the legislature was encompassing all the preceding events during the employment that led up to that. Why is that analogous to here? Well, let's say that at that point in Kroll you had had some type of handbook or something signed to say, we are not going to have a presumption about what happens with cancer for a firefighter. And that was something you signed as a matter of employment. Now you have the state saying, we're actually setting a standard for this going forward. We're changing the presumptions from the effective date on. Now, Kroll lost because this legislative change happened when an event, a triggering event, had occurred. But in this case, it's super clear that we don't fall on the wrong side of the line. We fall on the right side of the line because the time for the statute's actual application is after the effective date. All of the operative events in this case go forward. So all you have is an impairment, if you want to call it, of a term that wasn't vested, which doesn't trigger the contract clause for the Arizona and U.S. constitutions, which are analyzed the same. And you believe they are not vested.  You know, so let's say the town of Gilbert says, I really wanted my commanders to be at will employees and to be able to dismiss them even without a disciplinary basis. We contracted for that. There's a contract there. And now the statute changes and it says, going forward, I've lost that right. Why is that not a vested right by the town? So first off, no court has ever held an at will term to be a vested right, number one. Number two, at will terms are always on their face, subject to legislative requirements. So for example, the discrimination, minimum wage, anything else like that, they can be modified. And even in Arizona, you have cases specifically that say if an employer puts terms into a handbook and they actually modify what the at will status was through their handbook and the employee relies on it, then that actually is now enforceable by the employee. So all of that to say that at will term actually only vests when it's particularly executed. Like today, I'm going to say you are fired when you're at will. Now, at that point, when you're going to do that, you have to run through the checklist. Is this termination otherwise lawful or is it otherwise restricted by enactment of the legislature, either state or federal? I'll reserve. Oh, just one. I mean, there's no reason not to certify this question, right? I would love to have this actually certified. I think it is a novel issue of state law that has a wide ranging impact because we also have people that could be affected from handbook signatures to all kinds of other things. So certification would certainly be welcome on my side. Good morning, Your Honor. Thank you for the opportunity. Aaron Arntzen on behalf of the town of Gilbert, Nathan Williams, and Michael Solberg. Really at issue here, as the court has already homed in on pretty specifically, there are two main issues. The first is whether this 22 amendment to the Peace Officer's Bill of Rights can be retroactively applied, notwithstanding the lack of any express language that would indicate the intent to make it retroactively apply. And then assuming we get past that point, we get to the second portion of this argument, which is, is there an impairment of a vested substantive right? So turning first to the question of express, Judge Bumate focused on a couple of points specifically regarding preemption. And Your Honor used the expression that, well, there is this idea that if we take the negative or the inverse of the expression that this statute does not preempt those contracts that supplement or enhance, then the reverse must be true. Correct. I would suggest that a fair reading of both Kroll and of the Arizona Supreme Court's definition of express in the employment context and the retroactivity context would cut against that position. Before you get there, I mean, as a textual matter, you agree then that the 22 amendment is saying we are preempting things that detract from these protections. I think it says exactly. Yes, it says that there's going to be a preemption. There's preemption with respect to anything that supplements or enhances or that does not supplement or enhance on a going forward basis. Okay. So you agree there is preemption? I agree. Okay. But whether there's a retroactive effect, right, that can preempt statutes  Go ahead. It can preempt statutes on a contracts on a going forward basis. Okay. That's my problem. Preemption by its terms, by its very meaning, means that it is retroactively taking anything that exists prior to, you know, its forming and saying that this is now the law. Well, but that's not what the case law bears out, Your Honor. Just textually tell me why isn't that correct? Preemption only means that, right? Preemption means that with respect to anything that could exist. That exists. That exists. That it does preempt, yes. Yes. Yes. So as a textual matter, it seems like the Arizona legislator is saying anything that exists prior to the statute is now vacate or ineffective, at least with respect to these rights. If you read it, if you read preemption to believe that the inverse of does not preempt must also be true, then, yes, I would have to consider that. They could have easily said it. That's the problem I have with that interpretation, is the legislature could have easily said that if they wanted the inverse to be true as well, instead of couching it in this language, they could have expressly said that any contracts that are not consistent with this are hereby nullified or void, and that's — that would be clear. Thank you, Your Honor, and that is the town's — appellee's position, is that — and in the Johnson v. Hispanic Broadcasters of Tucson, which is a 2000 case that arose in the Arizona Employment Protection Act context, the court looked at the term expressly, i.e. whether a contract expressly restricts the right of either party to terminate an employment relationship, and the court said, quote, the word expressly means indirect or unmistakable terms, directly and distinctly stated, expressed, not merely implied, or left to inference. And that's the standard that courts have — that courts have lifted and taken, including in Kroll, applied to determine whether there's an express application — there should be an express application — excuse me, express intent to make a statute retroactively effective. So you're saying Kroll says that we take not the best reading of a statute, and then we kind of modify its best reading based off of this express requirement? I'm sorry, Your Honor. It's just kind of hard for me to understand what they're saying, is that we don't read the statute what it says or give it the best reading. We have to give it some sort of special nudge one way or the other in how we interpret it. In order to overcome the statutory presumption against retroactivity, I would think the answer is yes. And reading Kroll, I'm looking at paragraphs 28 and 29 specifically in that case, that there was language in that 2021 amendment to the workers' compensation statute that said — the statute was — the petitioners argued that it was very clear about who the amendment — amended statute should have applied to. It should have applied to both firefighters currently in service and former firefighters who are 65 years of age and diagnosed with certain forms of cancer and so forth. The argument from the appellants in that case was, look, that's a clear expression of intent for this amendment to retroactively apply. The Arizona Supreme Court rejected that analysis and said, no, that might say who the class of persons is who's eligible for this on a going-forward basis. It doesn't say when they're eligible for it.  So given that this issue really turns on how California courts would interpret this, this express, you know, express rule, you would agree that certification would probably be the best course of action? I don't believe that certification is necessary, but I do agree that it's an appropriate course of action in this Court's discretion. For the Arizona courts. I'm sorry, Your Honor. For Arizona. I think you said California. Oh, yes, for the Arizona Supreme Court, yes. We don't want California courts to reject it. We don't want California to decide it is for. That's true. Is it possible — just to tease out a little bit about the — does preemption necessarily mean that it has to override existing contracts, or could the legislature have intended to use that provision of that language to speak to overriding contracts in the future, ones that haven't been written yet or entered into? Well, Your Honor, and that's kind of what I'm trying to say. Jen Pumente and I disagree as to where that preemption point might happen. But our suggestion, based on every reading that I can see in Kroll v. Superstition, it doesn't necessarily look like preemption would invalidate everything forever and always. Backward-looking. Backward-looking. Okay. When do you think the effective date of this 22 amendment took place, then? The effective date of the 22 amendment was, I believe, it was September 24th, 2022. So sometime around when it was passed. Yes, within perhaps 30 or 90 days after. But your argument is not that preemption starts at a future date. You're just saying preemption cannot sometimes mean preemption. It means — Preemption — preemption when you're applying a statutory presumption against retroactivity may not necessarily work to impair contracts. And to that point, there's at least an argument as to vested substantive rights, number one, under the retroactivity doctrine. So your argument is it's not necessarily retroactive presumption? Correct. Preemption. Retroactive preemption, given, one, that statutory presumption. And, frankly, the contract clauses to the State and Arizona — the Arizona and Federal constitutions. In terms of retroactive impairment, I do want to touch on that for a second. The second primary question here on appeal is whether there's an impairment of a vested substantive right. Assuming that we're — assuming that this is a substantive right and there hasn't been any real argument to the contrary, the question is about when it vests. My colleague on the other side here said that there's — there couldn't have been a vested right because it's not vested until the right is asserted or when the injury arises that could give rise to the defense or to the claim. Under Kroll, that was how the Court analyzed the vesting date for purposes of an industrial injury arising under the workers' compensation statute, right? It could be that at some point in the — it could be that it never vests because a person never becomes injured. That's not how courts, including the Ninth Circuit, have looked at vested rights in an at-will or due process protected employment agreement in the employment context in past cases. And as one example, the court in Greenewalt v. Sun City West Fire District, which is 23 Federal Appendix 650, talked about when the parties' rights vested when they signed an employment contract. And the court relying on Arizona authority, Arizona Supreme Court authority, said that the rights of the parties were vested because they were, quote, actually assertable or were so substantially relied upon that retroactive divestiture of the right would be manifestly unjust. What was that site again? It was 23 Fed Appendix 650, the pin site of 651, Your Honor. So in the context of a contract that has been entered into, a contract for employment, we look at when the right — not when an injury arises, but when, as the Ninth Circuit's language says, when the right was actually assertable. In this case, the town had the immediate right, if it chose to do so, to terminate Appellant Blunt's employment. It could have been on the spot. It could have happened six months later. It could have happened a year later. In exchange, Appellant Blunt had the absolute right upon execution to obtain a promotion to the position of commander and an increase in his wages, an increase in salary. So those rights, everything that was necessary in order for — all the conditions precedent were satisfied, is what I'm trying to say. That there was nothing else that needed to happen. There was no contingency, as the Kroll case and as the Greenewalt case contemplated, that needed to occur in order for those rights to vest. So the town's position is that those rights, under an at-will employment agreement, had indeed vested. And secondly, that manifest injustice to the town would result, if the court were to hold otherwise — Why is that? Well, it would actually deprive the parties of consideration and unjustly enrich Appellant Blunt, right? Because to accept Appellant's request for retroactive application of the 2022 amendment to the at-will employment agreement would be to give him a promotion and a raise and deprive the town of its bargain for right. And so there's no — there's no reason, there's no consideration that's been exchanged at that point. Don't we take into account the public policy interests that drove the Arizona legislator to enact this law? Your Honor, under the Contract Clause analysis, yes. Part of the analysis is — the first prong is impairment of vested rights, which we've already discussed. And the second component, as Your Honor is suggesting, is whether it advances, quote, a significant and legitimate public purpose. Right. The town suggests, and its position is, that in those cases where they've — where courts have believed that a public interest has overridden the freedom to contract or given the ability of the legislature to impair a contract have all been in cases where the public interest broadly was served by the contract impairment. So in the Energy Reserves case, it's a U.S. Supreme Court case that was, from 1983, a law protecting consumers from escalating energy prices. Apartment Association of Los Angeles County, a law was passed prohibiting evictions during the COVID-19 pandemic, and so on and so forth. The other aspect of that, Your Honor, that's important to recognize, I think, is that even if a significant and legitimate public purpose that spoke to the public at large was at issue here, Apartment Association of Los Angeles County says that a heightened level, quote, a heightened level of judicial scrutiny is appropriate when the government is a contracting party. And so even if that's in question here and the town does not believe that it is, it's rather a relatively narrow class of people, we are automatically starting with a higher bar. Can I ask, so appellant, back to the certification question, appellant poses a question in which to certify to the Arizona Supreme Court, and I wanted to get your sense of whether you thought that was the right way to frame the question to the Supreme Court, assuming we went down that road. It's on page three. Does the POBR require discipline to be supported by just cause from non-probationary peace officers, notwithstanding terms of employment, agree to prior to the legislative amendment in 2022, stating that the peace officer is employed at will? If I may, Your Honor, I'll read it right here. I think, Your Honor, although I can't necessarily say I disagree with that formulation of the question, I think that if the court decides to certify the question to the Arizona Supreme Court, a more appropriate narrow focus on retroactivity, does the presumption against retroactivity under common law and ARS 1-244 prohibit retroactive application of the contract to the appellant in this case? Would you also want us to certify the impairment to contractual rights claim as well or issue as well? Yes, Your Honor. I think they're part and parcel of the same argument. Okay. Thank you, Your Honors. Thank you. Bottle? Your Honors, I can echo the last comment that my friend to my left just said. I think that when I wrote the question to be certified or the proposed question to be certified, I believe that the contract issue would automatically be analyzed through that, which was kind of the purpose of the wording. So I didn't see the need to have that broken out into a second part, but if the panel finds that helpful, I wouldn't oppose that. I think it's always better to be more specific than less specific when we're getting certification. That's been my experience. And I'll obviously defer to the panel's judgment on that. And obviously, the more questions, the more we can be able to use to do what we need to do. With that said, it kind of makes part of what I was going to say in the rebuttal a little less interesting because I was going to talk about Arizona's law and the presumptions that actually exist in Arizona statute. Because remember, we're dealing with two amendments here. So there's a lot of focus on the idea of what it preempts or doesn't and supplement or enhance. But I'd like to talk about the other sentence that was changed. The addition of this article outlines the minimum rights given to peace officers in this state. So when you read this in totality, you have the legislature saying these are the minimum rights that we want to have in this state. And then we can reference back to Arizona's rules of statutory construction where it's 1211A, the rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature. Then you also have B, which is statute said we liberally construed to affect our objects and to promote justice. So reading this together, you have in 2022 the legislature saying we want to establish the minimum rights going forward. Now we're not in a cruel situation where we're affecting ongoing proceedings. We're fortunately in this case not in a factual situation where we're wondering what do we do with a pending internal affairs investigation. That would be a really sticky issue that would, I believe, be appropriately characterized as a retroactive application. But here all we're asking for is going forward, should we actually do what the legislature said, which is enforce the minimum rights given to peace officers in this state? And the other interpretation of this kind of gets bizarre because I don't think that they're supposed to be. There's nothing in the legislative history of two separate standards for police officers and investigations. Did you sign a handbook in 2022 that said something different? Now you're subject to a different rule? Did you renegotiate your contract at some point? How do we actually determine that? I mean, that was the lay of the land before 2022, right? I mean, you know, you could have some people have certain contracts, other people subject to POBR rights. And so I take it the legislature did some cleanup work in order to make it a little more uniform. And you certainly could have that where Tucson had different rights than Phoenix. But what should never happen and would happen with my friend's argument on the other side is you might have two different Gilbert police officers, two different members of a police agency with two different appeals rights. And we don't even know how that works versus what we suggest is the POBR is the minimum rights, which is what the legislator said from the date of it taking effect going forward. Well, the Arizona Supreme Court will let us know which theory is more viable in their views. So thank you, Your Honor. Thank you to both counsel. The case just argued is submitted for a decision by the court. Your arguments were really helpful, by the way. This completes our calendar for the day, and we are on recess until 9.30 a.m. tomorrow morning. Actually, we are on recess until 9.30 a.m. Wednesday morning. This court for this session stands adjourned.
judges: RAWLINSON, BUMATAY, SANCHEZ